FILED
JAN 2 6 2004
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARCHELLE C. HARRIS**<br>1330 Seventh Street, N.W.<br>Apt. 605<br>Washington, D.C. 20001<br><br>    Plaintiff<br><br>v.<br><br>**DISTRICT OF COLUMBIA,**<br>    Serve: Anthony Williams<br>    Mayor of the District of Columbia,<br>    John A. Wilson Building<br>    1350 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20004<br><br>and<br><br>**CHAD HAMBRICK,**<br>300 Indiana Avenue, N.W.<br>Washington, D.C. 20001<br><br>    Defendants | CASE NUMBER 1:04CV00125<br><br>JUDGE: Paul L. Friedman<br><br>DECK TYPE: Civil Rights (non-employmen·<br><br>DATE STAMP: 01/26/2004 |

## COMPLAINT

### I. NATURE OF CLAIM

    1.    This is a civil action is for declaratory and injunctive relief and for compensatory and punitive damages enforce the rights of Plaintiff Marchelle C. Harris guaranteed by the Fourth and Fifth Amendments of the Constitution of the United States to be free from unreasonable searches and seizures and from deprivations of liberty without due process. Defendants Chad Hambrick and District of Columbia, by *respondeat superior*, violated Plaintiff Harris's Fourth Amendment right by arresting Plaintiff Harris without probable cause for disorderly conduct

1

while Plaintiff Harris remained in her home. Defendants Hambrick and District of Columbia violated Plaintiff Harris's Fifth Amendment rights when they deprived her of her liberty by arresting her without probable cause and forcing her to spend the night in prison.

## II. JURISDICTION

2. The jurisdiction of the Court is invoked under 42 U.S.C. § 1983 resulting from deprivations, under color of law, of Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution. Jurisdiction is also proper under 28 U.S.C. § 1331.

## III. VENUE

3. Venue is appropriate in this District Court pursuant to 28 U.S.C. § 1391 because the facts and circumstances involved in this lawsuit occurred in the District of Columbia and Defendant resides in the District of Columbia. Additionally, all records and evidence pertinent to this action are housed in the District of Columbia.

## III. PARTIES

4. Plaintiff Marchelle Cecelia Harris ("Plaintiff") is a resident of the District of Columbia, dwelling at 1330 Seventh Street, N.W., Apartment 605, Washington, D.C. 20001. She was unjustly arrested by Defendant Chad Hambrick on February 6, 2003, for disorderly conduct.

5. Defendant Chad Hambrick is currently employed by the District of Columbia Metropolitan Police Department as a sworn officer and was so employed on the date in question,

February 6, 2003. Plaintiff was a permanent career service employee of the District of Columbia at all times relevant to this complaint.

6. Defendant District of Columbia ("Defendant") is responsible for the District of Columbia Metropolitan Police Department ("MPD"), which is a governmental agency operating and existing under the laws of the District of Columbia. Its principal office is located at 300 Indiana Avenue, N.W., Washington, D.C. The MPD, as an agency of the District of Columbia, currently employs Defendant Chad Hambrick.

## IV. STATEMENT OF FACTS

7. On or about February 6, 2003, Plaintiff Harris was alone in her apartment at 1330 Seventh Street, N.W., between 10:00p.m. and 11:00p.m. She was preparing for bed and was dressed in an undershirt and underpants. She was playing the radio at a moderate volume.

8. Defendant Hambrick knocked on Plaintiff's door. Standing behind the door, Plaintiff opened the door several inches and Defendant Hambrick stated there was a complaint about music being too loud. Plaintiff nodded and went to shut the door before turning down the radio. Before Plaintiff could close the door, Defendant Hambrick pushed into the apartment, closed the door behind him, walked through the living room to Plaintiff's stereo system and turned the radio off.

9. Plaintiff asked Defendant Hambrick to leave. When Defendant Hambrick did not leave, Plaintiff asked him to allow her to get dressed. He refused.

10. At this point, Plaintiff's niece knocked on the door. Plaintiff went to the door to let her in, but Defendant Hambrick reached the door first, opened it and the closed it. When

3

Plaintiff explained that it was her niece at the door, Defendant Hambrick stated, "I don't give a damn who it is; they are not coming in here."

11. Plaintiff then went to the phone to call for help because she was undressed and afraid that Defendant Hambrick would attack her physically. She first called her brother, who lived close to her, and asked that he come and witness Defendant Hambrick's actions. Plaintiff then called 911 and asked to be connected to the MPD Third District station house to speak to Defendant Hambrick's superior officer. An unidentified Third District officer answered Plaintiff's call and she asked that another officer be sent to her home. She stated that Defendant Hambrick was standing in her kitchen and that she was dressed in her underpants and t-shirt and Defendant Hambrick would not allow her to get dressed or open the door to allow her niece to enter the apartment.

12. Several minutes later and in rapid succession, Plaintiff heard first one knock and then a second knock on the door. At the first knock, Defendant Hambrick opened the door and allowed two other MPD police officers and Plaintiff's niece to enter the apartment. At the second knock, Plaintiff reached for the door and Defendant Hambrick grabbed her from behind.

13. Defendant Hambrick threw Plaintiff against her coffee table and down onto the floor, pinning her arms behind her. He then dragged her up and handcuffed her. While Defendant Hambrick was wrestling Plaintiff, one of the other officers questioned Defendant Hambrick as to why he was taking such actions. Defendant Hambrick cursed at the other officers. Plaintiff was bruised from Defendant Hambrick's actions and suffered a cut on her hand.

14. Prior to handcuffing her, Defendant Hambrick did not inform Plaintiff that she

4

was about to be arrested. At no time did Plaintiff resist arrest; Defendant Hambrick moved so quickly, Plaintiff had no opportunity to resist.

15. One of the other officers then asked Plaintiff's niece to get some clothes for her and allowed Plaintiff to put on clothes. Defendant Hambrick took Plaintiff to the Third District station where she spent the night in a holding cell.

16. On the morning of February 7, 2003, Plaintiff was released from the jail cell. She received a citation for disorderly conduct, loud and boisterous. Plaintiff appeared in court on February 28, 2003, as directed by the citation. Defendant Hambrick did not appear at the court date. The court had no paperwork on the arrest and dismissed her case.

17. As a result of the incident on February 6, 2003, Plaintiff has suffered physical and emotional damage. Plaintiff suffered cuts and bruises from Defendant Hambrick's actions. She suffered from sleeplessness and gastro-intestinal illnesses as a result of the stress from this incident. Plaintiff was unable to stay alone in her apartment for almost two weeks after February 6, 2003. Plaintiff suffered psychological and emotional damage, causing her to be absent from her work for several weeks.

### COUNT I: VIOLATION OF THE FIFTH AMENDMENT AND 42 U.S.C. § 1983, DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

18. Plaintiff incorporates herein by reference the factual allegations contained in Paragraphs 1-17.

19. Defendants did intentionally falsely imprison Plaintiff, and in violation of the Fifth Amendment of the United States Constitution, deprived her of her physical liberty without

5

probable cause, reason, consent or justification.

20. Defendants, acting under color of state law, did deny Plaintiff of her due process rights when they summarily deprived Plaintiff of her liberty on February 6, 2003. In so doing, Defendant violated the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.

21. As a direct and proximate result of Defendants' actions, Plaintiff suffered physical and emotional injuries. Plaintiff has incurred and will incur in the future expenses from medical and emotional treatment. Plaintiff has lost and will in the future lose substantial time from her normal activities. Further Plaintiff's emotional injury includes but is not limited to physical and mental anguish, embarrassment and damage to her reputation.

## COUNT II: VIOLATION OF THE FOURTH AMENDMENT AND 42 U.S.C. § 1983, ILLEGAL SEARCH AND SEIZURE

22. Plaintiff incorporates herein by reference the factual allegations contained in Paragraphs 1-21.

23. By the foregoing actions, taken under color of law, Defendants deprived Plaintiff of the rights, privileges and immunities secured to her by the Constitution of the United States, in violation of the right of Plaintiff to be secure in her person and effects against unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States.

24. As a direct and proximate result of the actions of Defendants, Plaintiff was caused to suffer physical and emotional injuries. Plaintiff has incurred and will incur in the future expenses from medical and emotional treatment. Plaintiff has lost and will in the future lose substantial time from her normal activities. Further, Plaintiff's emotional injury includes but is

6

not limited to physical and mental anguish, embarrassment and damage to her reputation.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25. Plaintiff incorporates herein by reference the factual allegations contained in Paragraphs 1-24.

26. Defendants did intentionally, maliciously, and without justification, inflict emotional distress upon Plaintiff by taking the aforementioned acts, including but not limited to, falsely imprisoning and detaining the Plaintiff; verbally and physically abusing Plaintiff; threatening, harassing and intimidating Plaintiff.

27. As a direct and proximate result of the actions of Defendants, Plaintiff suffered physical and emotional injuries. Plaintiff has incurred and will incur in the future expenses from medical treatment. Plaintiff has lost and will in the future lose substantial time from her normal activities. Further, Plaintiff's emotional injury includes but is not limited to physical and mental anguish, embarrassment and damage to her reputation.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Marchelle C. Harris prays that this Court:

1. Award to Plaintiff compensatory damages in an amount to be determined at trial, but not less than the amount of One Million Dollars ($1,000,000.00), jointly and severally against each Defendant for the matters alleged in this Complaint;

2. Award to Plaintiff punitive damages in an amount to be determined at trial, but not less than the amount of One Million Dollars ($1,000,000.00), jointly and

severally against each Defendant for the matters alleged in this Complaint;

3. Award to Plaintiff reasonable costs and attorney's fees;

4. Grant such other and further relief as this Court shall deem just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby demands a jury of six (6) of all matters so triable.

Respectfully submitted,

*/s/ Leslie Deak*
Leslie Deak [PA0009]
Deats & Levy, P.C.
1200 G Street, N.W.
Suite 800, #099
Washington, D.C. 20005
Tel. (800) 781-3967

*/s/ Ted J. Williams*
Ted J. Williams [414758]
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
Tel. (202) 434-8744

ATTORNEYS FOR PLAINTIFF